WATERWATCH OF OREGON, INC.,
an Oregon nonprofit corporation,
*Petitioner,*

*v.*

OREGON WATER RESOURCES DEPARTMENT,
William Young in his official capacity as Director
and the Oregon Water Resources Commission,
*Respondents,*

*and*

Robert HALE,
Robert Levy, Tony Amstad, Doy Lehman,
M. Koester, Ken Coppinger, Steven Mills,
Lloyd Piercy, Curt Perkins, Kent Madison,
Chet Prior, Glen Rohde, Skip Walchli,
John Brogoitti and J. R. Simplot Company,
an Idaho corporation,
*Intervenors.*

(CA A73533)

852 P2d 902

Karen A. Russell, Portland, argued the cause for petitioner. With her on the brief were Karl G. Anuta and Jolles, Sokol & Bernstein, Portland.

John T. Bagg, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Richard M. Glick, Portland, argued the cause for intervenors. With him on the brief were Lory J. Kraut and Davis Wright Tremaine, Portland.

Before Richardson, Chief Judge, and Deits and Durham, Judges.

DEITS, J.

## DEITS, J.

In this proceeding under ORS 183.400, petitioner challenges administrative rules of the Oregon Water Resources Commission that allow a gradual reduction in pumping levels rather than an immediate restriction to the levels that petitioner asserts are required to maintain "[r]easonably stable ground water levels," ORS 537.525(7), in the Butter Creek Critical Ground Water Area. Petitioner argues that the rules are contrary to the statute and are invalid.

Petitioner's reasoning is as follows: ORS 537.525(7) states, as one of the policies of the Ground Water Act of 1955 (Act), ORS 537.505 *et seq*, that "[r]easonably stable ground water levels be determined and maintained." By rule, the commission has defined "reasonably stable water level" to mean

> "an annual static water level decline of less than one foot over the entire subarea as determined by averaging the annual water level change of the representative wells in the subarea, and the water level change for the subarea averaged over five consecutive years displays no decline." OAR 690-507-620(5).

OAR 690-507-620(6) provides:

> " 'Sustainable annual yield' [SAY] means the volume of water that can be pumped on an annual basis while maintaining reasonably stable water levels. This is a measurement of the capacity of the available source."

The rules that petitioner challenges expressly allow water use that goes beyond the SAYs in certain areas during a five-year "phase-in" period.[1] Petitioner contends that those rules

---

[1] The challenged rules provide:

"Except as specified in 690-507-650(3) and 690-507-670(7), the use of water from the basalt groundwater reservoir within the Butter Creek Groundwater Area shall be limited to the sustainable annual yield." OAR 690-507-630(1).

"Except as specified in 690-507-650(3) and 690-507-670(7), each of the seven subareas in the Butter Creek Critical Groundwater Area shall be managed according to the sustainable annual yield within that subarea. The Department shall refine the sustainable annual yield value over time through the use of pumpage data and the response of groundwater levels." OAR 690-507-650(1).

"The sustainable annual yield for the Echo Junction Subarea is 1260 acre feet. A gradual reduction in pumpage will be allowed at the following schedule:

allow pumping that exceeds the limits defined as necessary to maintain reasonably stable water levels and are contrary to ORS 537.525(7).

Respondents answer that petitioner focuses on one of the policies of the Act to the exclusion of all others. They point, in particular, to ORS 537.525(8) and ORS 537.525(5) as stating policies that differ from and compliment that of ORS 537.525(7). They assert that those statutory policies together support the gradual reduction approach of the challenged rules. The policy provided for by ORS 537.525(8) is that:

"Depletion of ground water supplies below economic levels, impairment of natural quality of ground water by pollution and wasteful practices in connection with ground water be prevented or controlled *within practicable limits*." (Emphasis supplied.)

ORS 537.525(5) states the policy that:

"Adequate and safe supplies of ground water for human consumption be assured, while conserving maximum supplies of ground water for agricultural, commercial, industrial, thermal, recreational and other beneficial uses."

Respondents conclude that they were authorized, if not required, to consider all of the policies of the Act in promulgating the rules. According to them, the amelioration of economic hardship for agricultural users and providing a period for "adjustment of agricultural practices to a declining

---

2700 acre feet in 1992; 2340 acre feet in 1993; 1980 acre feet in 1994; 1620 acre feet in 1995, and 1260 acre feet in 1996. These values will be used as if they were the sustainable annual yields." OAR 690-507-650(3).

"A gradual reduction of pumpage in excess of the sustainable annual yield shall be implemented beginning in 1991.

"(a) Those users who would not be allocated any water in 1991 shall be allowed to pump eighty percent of their average pumpage from 1987, 1988, and 1989.

"(b) Those users who would not be allocated any water in 1992 shall be allowed to pump sixty percent of their average pumpage from 1987, 1988, and 1989.

"(c) Those users who would not be allocated any water in 1993 shall be allowed to pump forty percent of their average pumpage from 1987, 1988, and 1989.

"(d) Those users who would not be allocated any water in 1994 shall be allowed to pump twenty percent of their average pumpage from 1987, 1988, and 1989." OAR 690-507-670(7).

groundwater supply'' are objectives that implement the policies of ORS 537.525(5) and (8), without ultimately defeating the objective of ORS 537.525(7).

■■ We agree with respondents. The problem with petitioner's argument is that it focuses on only one objective of the statute and disregards other statutory objectives. The challenged rules strike a balance between stabilization of water supplies and providing an interim during which agricultural practices can be accommodated to the regulatory stabilization mechanism. Contrary to petitioner's assertions, there is nothing in the statutes that prevents the commission from gradually implementing a policy designed to achieve reasonably stable water levels. The commission's rules constitute an application of the statutory policies that we conclude is consistent with them and that we will not disturb. *See Doherty v. Oregon Water Resources Director*, 308 Or 543, 545, 559, 783 P2d 519 (1989).

Petitioner relies extensively on *Doherty*. Notwithstanding the language in that opinion that petitioner emphasizes, the case does not support its position here. The petitioners in *Doherty* challenged the director's designation of the Butter Creek Critical Ground Water Area. They relied on ORS 537.525(8), which they understood, wrongly, to mean that the agencies were required to allow the water supply to be used until exhausted. The Supreme Court rejected that argument. The court affirmed the critical ground water area designation, which the director had justified by reference to the stabilization policy of ORS 537.525(7) and various other policies of the Act, on which the court also relied.

What petitioner seeks here is the mirror image of what the petitioners in *Doherty* sought: to have one of the Act's policies implemented to the exclusion of the other policies of the Act. The contention is no more meritorious because the shoe is on the other foot.

Rules held valid.